IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT L. MOODY, JR. and<br>MOODY INSURANCE GROUP | §<br>§<br>§ | |
| v. | § | CASE NO. _____ |
| | § | |
| AMERICAN NATIONAL INSURANCE<br>COMPANY | §<br>§<br>§ | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COME NOW, Robert L. Moody, Jr. and Moody Insurance Group, and would respectfully show the Court as follows:

**I.
PARTIES**

1. Robert L. Moody, Jr. ("Moody") is a resident and citizen of Galveston County, Texas.

2. Moody Insurance Group is an insurance company doing business in Galveston County, Texas.

3. American National Insurance Company, is a foreign corporation incorporated in the State of Delaware, with its principal place of business in Galveston, Texas, and can be served with citation for service of process by delivering a copy of the Complaint to American National Insurance Company, 1 Moody Plaza, Galveston, TX 77550-7947. American National Insurance Company is a company that has a class of securities registered under Section 12 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under Section 15 (d) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78o(d)) and the conduct subject to this

1

action relates to the conduct of the officers, employees, or agents of American National Insurance Company.

## II.
## JURISDICTION

4. This Court has personal jurisdiction over American National Insurance Company ("ANICO") because ANICO did and/or does business in the State of Texas, has its principal place of business in Galveston, Texas, and committed torts in whole or in part in this state against Plaintiffs, in this judicial district, as more fully set forth herein.

5. Subject matter jurisdiction is proper under 28 U.S.C. § 1331 and the Sarbanes Oxley Act "kick-out" provision of 18 U.S.C. § 1514A (b) (1)(B), which provides that, if the Secretary of Labor has not issued a final decision within 180 days of filing of the complaint with the Secretary of Labor and there is no showing that there has been delay due to the bad faith of the complainant, the complainant may bring an action at law or equity for *de novo* review in the appropriate district court of the United States, which will have jurisdiction over such action without regard to the amount in controversy.

6. Plaintiff, Robert L. Moody, Jr. filed a Sarbanes-Oxley complaint with the Occupational Safety and Health Administration ("OSHA") against ANICO in accordance with 20 C.F.R. § 1880 *et. seq.* on December 12, 2018. *See,* Exhibit A. The complaint reference number was ECN35928. *See* Exhibit A. Plaintiff, Robert M. Moody, Jr. was then interviewed by the OSHA Oklahoma City field office regarding the complaint on January 9, 2019, and again on February 6, 2019. In the course of the OSHA administrative investigation, Moody diligently provided all information requested regarding the complaint to OSHA administrative officer, Renato Uribe, in the OSHA Oklahoma City office. OSHA did not act on the complaint or issue any preliminary or final ruling as to the complaint within 180 days of filing of the complaint.

7. This Complaint is timely since more than 180 days has passed since the filing of the original OSHA Sarbanes-Oxley Complaint.

8. Plaintiff, Moody, was acting as an employee, contractor and/or subcontractor of ANICO and engaged in protected activity in accordance with 18 U.S.C. § 1514A (a) (1) (C) and 1514A (a) (2).

## IV.
## PROTECTED ACTIVITY

### A. FACTS COMMON TO ALL COUNTS

9. Plaintiff, Moody, was an Advisory Director of ANICO until his termination for the conduct alleged in this Complaint. Moody is an insurance agent selling insurance for and on behalf of ANICO as a contractor. Moody is also an employee of Moody Insurance Group ("Moody Insurance" herein), which is also a contractor and/or subcontractor of ANICO and sells insurance for and on behalf of ANICO. Under the whistle blower provision of the Sarbanes-Oxley Act, protected employees include employees of contractors or subcontractors to public companies. Moody Insurance and Moody are contractors and/or subcontractors to ANICO.

10. On or about April 28, 2017, while attending the ANICO Board of Directors ("Board") and shareholders meetings, Moody made a complaint that the officers were allowing Ross Moody, Francis A. Moody-Dahlberg, and E. J. Pederson (the "Non-Disclosing Directors") to be placed on the ANICO Board, and/or retained on the Board, when those persons and the company had failed to adequately disclose material information. At the time of the Moody complaint during the Board meeting, the Non-Disclosing Directors had already stood for election earlier that day and neither the Company nor the Non-Disclosing Directors had made disclosure of this material information.

11. Moody complained directly to the officers of ANICO, including Jim Pozzi, the ANICO President, Mark Flippin, the Company's secretary/vice president, and ANICO lawyers: Irwin "Buddy" Herz, Andy Mytelka and Greg Garrison, and the ANICO Board. Moody's specifically complained that (1) the Non-Disclosing Directors were contemporaneously serving as officers or directors of another insurance company, National Western Life Group (hereinafter "National Western"); (2) while directors for National Western, National Western unlawfully engaged in the sale of insurance in Brazil without a license, with their full knowledge and approval; (3) National Western was investigated and fined $6 billion for engaging in the unlawful sale of insurance; (4) National Western was subject to a cease and desist order barring the company from any further sale of insurance in Brazil; (5) Brazilian investigators had found National Western's acted with contempt of Brazilian insurance law; (6) the officers and directors of ANICO had a duty of disclosure of this information to the shareholders; and (7) a legal opinion should be obtained about this non-disclosure and the duties of the company.

12. Moody's complaints and concerns arose from an August 29, 2016, decision of the Brazilian Board of Appeals of the National Private Insurance, Open Private Pension and Capitalization System ("the Board of Appeals"), which affirmed a 2011 final regulatory penalty against National Western for the unlawful sale of insurance in Brazil without a license, finding that National Western willfully and intentionally failed to comply with Brazilian law. This unlawful sale of insurance caused the rendition of an administrative penalty against National Western by the Brazilian insurance regulatory authority, Superintendencia De Serguros Privados (Superintendency of Private Insurance) ("SUSEP"). SUSEP had originally issued a civil penalty in the amount of $6 billion in United States dollars, one of the largest corporate fines against any United States Company ever rendered. While the fine was later reduced, SUSEP also rendered a

cease-and-desist order which prohibited National Western from selling insurance in the Country of Brazil. This order was affirmed by Brazilian regulators with a finding that National Western had "disregarded Brazilian laws" and demonstrated "a complete lack of knowledge" of Brazilian insurance regulations. Brazilian regulators also concluded that National Western had acted with "contempt" of Brazilian insurance law. This conduct had occurred while the Non-disclosing board members [Ross Moody, Moody-Dahlberg and Pederson] were serving as directors on the National Western Board, invoking a duty under SEC regulations to fully disclose this information to shareholders pursuant to 17 C.F.R. § 229.401 (hereinafter "S-K Regulations"). Moody offered the Board of Appeals opinion for review at the Board meeting but no one asked to review it.

13. Moody complained that the "American National Insurance Company SEC Disclosure Questionnaire" signed by Ross Moody as being true and correct did not disclose any of this information. At this meeting, Ross Moody took the position that the lawyers filled out the form. Plaintiff, Moody explained that once this document was signed by Ross Moody, he assumed responsibility for its veracity. Plaintiff, Moody complained that the failure to provide the National Western information would mislead shareholders. Moody stated that this information also needed to be disclosed for other National Western Directors which would have included Francis A. Moody-Dahlberg and E.J. Pederson, since they also served as directors to National Western and had approved of this unlawful conduct during their tenure. Moody verbally complained that, by failing to disclose, ANICO had published misleading information about prospective directors in its Schedule 14A proxy statement. Moody expressed concern as to whether placing the Non-Disclosing Directors on the ANICO Board was in ANICO's best interest, especially since this information had not been disclosed to shareholders.

4849-3637-4936v.1

14.     Moody pointed out that a criminal investigation into National Western by SUSEP was still pending and that information pertaining to this administrative penalty should be reported to ANICO shareholders.

15.     Moody told the officers and directors of ANICO that ANICO had a fiduciary obligation to provide complete and accurate information to its shareholders relating to the past conduct of its board members and that ANICO was failing to carry out these legal responsibilities.

16.     Moody further complained that ANICO had failed to properly investigate and/or review this information so that it could be included in the ANICO proxy statement and disclosed to shareholders before the Non-Disclosing Directors' election to the ANICO board.

17.     On or about April 28, 2017, Moody further requested that an independent legal opinion be obtained to assess whether ANICO had violated SEC regulations. ANICO's lawyers, Irwin "Buddy" Herz, Andrew Mytelka, and Greg Garrison also represented National Western, the company that had been the subject of the $6 billion administrative penalty and cease-and-desist order. Moody was concerned that ANICO was failing to follow proper disclosure procedures as required by SEC regulations, and was not being provided adequate legal counsel because of the conflict of interest which existed.

18.     At this meeting, Moody also expressed concern that ANICO had not properly vetted these Board members by following ANICO's own code of ethics. Part of ANICO's Code of Ethics requires compliance with all applicable laws, rules, and regulations, including SEC regulations. A special committee exists to provide a review of prospective board members and/or officers who serve the company. The ANICO Code of Ethics is required by 17 C.F.R. § 229.406, and companies filing under the Security and Exchange Act are required to maintain and implement a code of ethics policy.  Moody was concerned that ANICO's company officers and Board members were failing

to properly implement its Code of Ethics policies, as required by law, by reviewing board members and prospective board members to ensure adherence to the Code of Ethics. Moody expressed concern that if the Code of Ethics was not properly followed, ANICO would be in violation of SEC regulations which not only required the adoption of an ethics policy, but also the creation of administrative controls to secure enforcement of the company ethics policies.

19. Even without the required disclosure, the three Non-disclosing directors election or re-election to ANICO was not unanimous. Prospective board member, Ross R. Moody, had 215,266 shareholder votes cast in opposition; likewise, re-elected board member, Frances A. Moody-Dahlberg, had 218,469 shareholder votes cast in opposition and E.J. Pederson 138,148 shareholder votes cast in opposition.

20. While Moody verbally raised this complaint at the April 28, 2017 meeting, Moody had also expressed concern in earlier correspondence. Moody made previous written requests to ANICO's lawyers regarding the need for ANICO to investigate this unlawful conduct. Before the proxy statement was sent to shareholders, on February 24, 2017, Moody requested information relating to the extent ANICO had investigated the administrative penalty assessed against National Western as it related to its director, Ross R. Moody. On March 10, 2017, ANICO responded, by and through its lawyer, Andy Mytelka (working for the firm that also represented National Western), that no such investigation had ever occurred.

21. On April 28, 2017, after Moody voiced his complaints and concerns to the ANICO officers, Non-Disclosing Director, Ross R. Moody, responded that Plaintiff Moody was "out of control." However, even before this meeting, on February 24, 2017, Plaintiff Moody had already made a written request that the Non-Disclosing Directors be investigated. After making this inquiry, ANICO's lawyer, Irwin "Buddy" Herz, verbally threatened Moody that he was going to

"ruin" him and "make your life miserable." These threats, occurring in proximity to the time Plaintiff, Moody made his complaints, illustrate that ANICO, through its officers and agents, ignored Moody's protests and, in fact, initiated retribution against Moody.

### THE SHAREHOLDER DERIVATIVE COMPLAINT

22. Almost contemporaneously with making his complaint to the ANICO Officers, Moody had made a written request on April 17, 2017, as a major shareholder in National Western, that it cease selling insurance without a license in foreign markets, including Brazil. While National Western rejected Moody's request, it secretly acted in agreement with his request and began withdrawing from foreign markets in the summer of 2017. Without disclosing this information to Moody, National Western rejected Moody's request, resulting in his filing a shareholder derivative suit on behalf of National Western on September 23, 2017, in Galveston County State District Court. This suit was dismissed by the Galveston County State District Court on May 16, 2018, on a plea to the jurisdiction, which is now being appealed. On or about the time of the derivative suit's dismissal, ANICO began initiating its acts of retribution against Moody due to his complaints regarding the failures to disclose material information by the Non-Disclosing Directors and officers, Ross R. Moody, Francis A. Moody-Dahlberg, and Elvin J. Pederson.

### B. PROTECTED ACTIVITY – SPECIFIC ACTS

23. Plaintiffs hereby restate and re-allege each and every allegation contained in Paragraphs 1 through 22 above, and every subparagraph therein as though they are fully set forth herein.

### DISCLOSURES REQUIRED BY 17 C.F.R. § 229.401, REGULATION S-K.

24. Upon trial of this case, the evidence will show that Plaintiffs engaged in protected activity by making formal complaints that the Non-Disclosing Directors and ANICO were not

making required disclosures. Plaintiff Moody made these complaints to Jim Pozzi, President of ANICO, who had supervisory authority over Moody and had the exclusive authority to cancel Moody's contracts with ANICO. The evidence will show that Mr. Pozzi did, in fact, cancel numerous contracts with Moody after Plaintiff presented his complaints to Mr. Pozzi, other ANICO officers, and lawyers.

25. Moody's complaints were based on his reasonable belief that ANICO and the Non-Disclosing Directors were failing to make disclosures required by the SEC regulations and law. Moody held a reasonable belief that these SEC disclosures were material to the evaluation of the Non-Disclosing Directors professional competence and their ability or integrity as directors. Moody's complaints implicated violations of SEC disclosure regulations in one or more of the following ways:

   a. ANICO's failure to adhere to the disclosure requirements under 17 C.F.R. § 24.014a-101 by including the business experience of the director or prospective director required by 17 C.F.R. § 229.401 (e) (1). The prospective directors, Ross R. Moody, Francis A. Moody- Dahlberg and Elvin "Jere" Pederson failed to disclose in their questionnaires their involvement with National Western's unlawful conduct in Brazil, which led to the imposition of a 6 Billion dollar fine and a cease and desist order prohibiting the unlawful sale of insurance in Brazil, and ANICO failed to disclose such conduct in its proxy statement to the shareholders;

   b. ANICO'S failure to adhere to the disclosure requirements under 17 C.F.R. § 24.014a-101 by including information regarding a director or prospective directors' involvement in legal proceedings as required by 17 C.F.R. § 229.401 (f), including but not limited to:

      1. requiring a prospective director or current director to disclose when they are the named subject of a pending criminal proceeding. 17 C.F.R. § 229.401 (f) (2). The Non-Disclosing Directors, Ross R. Moody, Francis A. Moody-Dahlberg and Elvin "Jere" Pederson were Directors of National Western, which had been found to have willfully

violated the laws of Brazil regarding the sale of insurance to Brazilian residents, a criminal investigation had been instituted out of the U.S. District Court for the Western District of Texas, and National Western had advised these three individuals to cease international travel to Brazil;

2. requiring a prospective director or current director to disclose when such person was the subject of an order, judgment or decree permanently or temporarily enjoining him from, or otherwise limiting, acting as an affiliated person, director, or employee of an insurance company or engaging in or continuing any conduct or practice in connection with such activity. 17 C.F.R. § 229.401 (f) (3) (i). The Non-Disclosing Directors, Ross R. Moody, Francis A. Moody-Dahlberg and Elvin "Jere" Pederson were Directors of National Western, which had been found to have willfully violated the laws of Brazil regarding the sale of insurance to Brazilian residents, and had been enjoined from continuing such practices or engaging in any business in Brazil;

3. requiring a prospective director or current director to disclose when such person was the subject of an order, judgment or decree permanently or temporarily enjoining him from, or otherwise limiting, such person from engaging in any type of business practice. 17 C.F.R. § 229.401 (f) (3) (ii). The Non-Disclosing Directors, Ross R. Moody, Francis A. Moody-Dahlberg and Elvin "Jere" Pederson were Directors of National Western, which had been found to have willfully violated the laws of Brazil regarding the sale of insurance to Brazilian residents, and had been enjoined from continuing such practices or engaging in any business in Brazil;

4. requiring a prospective director or current director to disclose when such person was the subject of, or a party to, any Federal or State judicial or administrative order, judgment or decree or finding relating to an alleged violation of any law or regulation respecting insurance companies, including a civil money penalty. 17 C.F.R. § 229.401 (f) (7) (ii). The Non-Disclosing Directors, Ross R. Moody, Francis A. Moody-Dahlberg and Elvin "Jere" Pederson were Directors of National Western, which had been found to have willfully violated the laws of Brazil regarding the sale of insurance to Brazilian residents, and had been enjoined

10

>> from continuing such practices or engaging in any business in Brazil;
>
> c. The Non-Disclosing Directors failure to make the disclosures required by 17 C.F.R. § 229.401 (e) (1), (f) (2), (3) (i) and (ii), and (7) (ii), as identified in subparagraphs a and b of this paragraph 25.

17 C.F.R § 229.401 ("Regulation S-K").

26. Irrespective of whether any specific SEC rule was violated, ANICO had a duty to disclose the unlawful conduct [as implemented by Ross R. Moody, Francis Moody-Dahlberg and Elvin J. Pederson] because it was material to the ANICO disclosures. There was a substantial likelihood that a reasonable investor would consider this information important. This was the essence of Moody's complaint made to ANICO on April 28, 2017. Moody argued on that day that the shareholders should have been informed of this information prior to the election of these directors. The evidence will show that this disclosure was necessary because the ANICO Schedule 14A Disclosures, submitted to shareholders prior to the April 28, 2017 election, made the following representation relating to Ross R. Moody after explaining that he had served as the President and Chief Operating Officer of National Western Insurance Company from 1992-2015:

> "Mr. Moody has served as an insurance company executive for approximately twenty-five years. His knowledge and experience is valuable to our Board's discussions of operational and strategic matters."

Furthermore, ANICO's Schedule 14A disclosures also referenced the role of directorship at National Western Insurance Company as instrumental in the qualifications for Francis Moody-Dahlberg and E. J. Pederson. For Mr. Pederson, the disclosures also referenced his membership on the National Western stock option and audit committees as important to his qualifications. By holding out the knowledge and experience of these three individuals as directors of National Western Insurance Company, ANICO was obligated to include material information about

11

National Western's performance as it related to these three directors. By omitting facts relating to National Western's unlawful conduct, including its extraordinary administrative penalty and cease-and-desist order, ANICO was omitting material facts that a reasonable shareholder would consider important in deciding how to vote.

27. Accordingly, Moody held a reasonable belief that the non-disclosure of National Western's misconduct as it related to the Non-Disclosing Directors [Ross R. Moody, Francis Moody-Dahlberg and E. J. Pederson] was either a direct violation of Regulation S-K of the SEC regulations or, in the alternative, a violation the materiality requirement as interpreted by the United States Supreme Court and subsequent federal court decisions.

**PROPER ENFORCEMENT OF ANICO'S ETHICS POLICIES**

28. In addition to his complaints implicating ANICO's failure to follow SEC disclosure regulations, Moody's complaints implicated a failure of ANICO to comply with its corporate ethics policy. Under 17 C.F.R. § 229.406, ANICO's Code of Ethics for its principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions is required to deter wrongdoing and promote:

> (1) Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;
>
> (2) Full, fair, accurate, timely, and understandable disclosure in reports and documents that a registrant files with, or submits to, the Commission and in other public communications made by the registrant;
>
> (3) Compliance with applicable governmental laws, rules and regulations;
>
> (4) The prompt internal reporting of violations of the code to an appropriate person or persons identified in the code; and
>
> (5) Accountability for adherence to the code.

The Non-Disclosing Directors' failure to make required disclosures, ANICO's failure to make required disclosures in its Proxy statement, ANICO's failure to vet the directors, and ANICO's chief executive officer's failure to hold the Non-Disclosing Directors and others accountable all constituted a violation of ANICO's Code of Ethics.

29. The evidence will show that Moody reasonably believed that ANICO's corporate misconduct in failing to disclose the unlawful activity of its board members, through their activities as directors of another insurance company, as required by the Company's Code of Ethics, including the submission of incomplete information in the company's 14A filings, constituted a violation of Securities and Exchange rules relating to proper disclosures as required by the ANICO Code of Ethics.

30. Each of the foregoing particulars, either individually or collectively, constituted protected activity by Moody. In each instance, the Plaintiffs reasonably believed corporate misconduct had occurred or was likely to occur in violation of SEC regulations. As a result of Moody's presentation of these complaints to Jim Pozzi, President of ANICO, ANICO's lawyers, Irwin "Buddy" Herz, Andy Mytelka, and Greg Garrison, ANICO cancelled numerous contracts with Moody and removed him from the ANICO Advisory Board. The evidence will show that Moody's complaints made on or about April 28, 2017, were a contributing factor to ANICO's cancellation of Moody's and Moody Insurance's contracts, and Moody's removal from the ANICO Advisory Board.

## VI.
## COUNT 1 – VIOLATION OF 18 U.S.C. § 1514A

31. Plaintiffs hereby restate and re-allege each and every allegation contained in Paragraphs 1 through 30 above, and every subparagraph therein, as though they are fully set forth herein.

### A. ADVERSE ACTIONS

32. The evidence will show that ANICO proceeded to take numerous adverse actions against Plaintiffs as a result of Moody's complaint relating to ANICO and the Non-Disclosing Directors failure to disclose as required by common law or Regulation S-K, in addition to Code of Ethics Violations. In late May 2018, within weeks of the dismissal of the shareholder derivative lawsuit brought on behalf of National Western, ANICO held its annual shareholder's meeting. It was customary for ANICO to hold its election of Advisory Board members during the shareholder meeting. Moody was first elected to the ANICO Advisory Board in approximately 2006 and continued as a member for 12 years. However, at the 2018 shareholder meeting, ANICO postponed the election of its Advisory Board members. In its history, ANICO had <u>never</u> postponed the election of Advisory Board members. Then, on July 26, 2018, at a subsequent board meeting apart from the annual shareholder's meeting, Jim Pozzi, President of ANICO, along with ANICO's lawyer, Andy Mytelka, informed Plaintiff, Moody that they had removed him as an Advisory Board member.

33. As an Advisory Board member, Moody had expressed his concern over the Non-Disclosing Directors and ANICO's failure to comply with SEC disclosure requirements and ANICO's Code of Ethics. This was part of Moody's duty to ANICO as an advisory board member. As an Advisory Board member, Moody was the primary insurance agent representative on the Advisory Board and would provide advice on marketing, legal compliance, and product knowledge from an agent's perspective. Until Moody's removal in 2018, ANICO's officers and directors had never removed a single Advisory Board member for any reason, other than death. ANICO's adverse action towards Moody was unprecedented. Furthermore, this action took place within a temporal proximity of the dismissal of the National Western shareholder derivative suit

filed by Moody. ANICO's action also took place shortly after National Western, whose board members include ANICO board members Ross R. Moody, Frances Moody-Dahlberg, and E. J. Pederson, announced its withdrawal from the sale of insurance in foreign markets, including Brazil. This was the very action that Moody requested National Western take in his letter to its Board, a year earlier, in June 2017.

34. Contemporaneously with Moody's removal as an ANICO Advisory Board member, ANICO cancelled significant contracts with Plaintiffs. The week of July 26, 2018, the same week of Moody's removal as an Advisory Board member, Plaintiffs' contract to sell a major product for ANICO, identified as Guaranteed Universal Life – ANTEX and Term Insurance Antex was cancelled by ANICO President, Jim Pozzi. Moody Insurance notified its agents and employees of this cancellation on August 14, 2018. ANICO'S cancellation of the ANTEX contract resulted in the prospective loss of approximately $2 million annually in gross revenue to Moody Insurance Group. The following month, ANICO's President, Jim Pozzi, threatened Moody that he was planning to cancel the Moody Insurance Group consulting agreement. Mr. Pozzi ultimately carried out this threat and cancelled the contract. This cancellation resulted in an approximate loss of $10,000 in monthly revenue to Moody Insurance Group.

35. On August 2, 2018, Moody was notified by Moody Bank that his office lease was being terminated. The Moody Insurance Group had officed at this space under a lease dating back to December 1, 2000. ANICO's lawyer, Irwin "Buddy" Herz, sits on the board of Moody Bank. It appears Mr. Herz was instrumental in seeking cancellation of Moody's lease for and on behalf of ANICO. This action would be consistent with his earlier threat to Moody that he was going to "ruin him" and "make his life miserable." Ironically, on the very same day Moody was removed from his position as Advisory Board member, Irwin "Buddy" Herz, whose firm was acting as legal

15

counsel for both ANICO and National Western, was placed on the ANICO Board. It should be noted that no disclosure of this conflict was ever made to ANICO shareholders.

### B. STATUTORY VIOLATIONS

36. The evidence will show that there is reasonable cause to believe that the protected actions of Plaintiffs were a contributing factor to ANICO taking adverse actions against Plaintiffs. A contributing factor is any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision. The evidence will show that prior to these decisions and actions, ANICO had not issued a single complaint against Moody regarding the performance of his duties as an insurance agent or Advisory Board member. Over his years of work and service, ANICO had not expressed any dissatisfaction, in any form or fashion, with Moody's performance. ANICO will be unable to establish, on the basis of clear and convincing evidence, that its actions would have been taken in absence of Moody's protected activity. Accordingly, the evidence will show that, at least one of the reasons for the adverse actions against Plaintiffs was due to Moody's complaints to the ANICO officers and Board concerning non-compliance with SEC disclosure requirements and the ANICO Code of Ethics.

37. The evidence will show that the adverse actions taken by ANICO constituted a violation of 18 U.S.C. § 1514A relating to civil actions to protect against retaliation. In accordance with 18 U.S.C. § 1514A (a) (1), Moody provided information, or caused information to be provided, to otherwise assist ANICO in an investigation regarding conduct which Moody reasonably believed constituted a violation of a Securities and Exchange Commission rule and/or a violation of federal statute. Moody appropriately complained of the Non-Disclosing Directors and ANICO's failures to disclose required information and fulfilment of their fiduciary duties. His complaints were made to those officers and agents of ANICO with supervisory authority over him

and were based upon a reasonable belief that these laws were being violated. As a result of Moody's complaints, ANICO, its officers and agents discharged him and Moody Insurance, threatened and harassed Moody, and discriminated against him and Moody Insurance in the terms and conditions of their employment. The retaliatory actions taken against Moody by ANICO constitute a violation of 18 U.S.C. § 1514A.

## VII.
## DAMAGES

38. Plaintiffs hereby restate and re-allege each and every allegation contained in Paragraphs 1 through 37 above, and every subparagraph therein as though they are fully set forth herein.

39. The evidence will show that Plaintiffs have suffered the following damages for which they now seek redress:

   a. All monetary loss and other damages suffered by Robert L. Moody, Jr. for his removal as an Advisory Board member of ANICO, which would, in all probability, have been a lifetime appointment;

   b. All monetary loss and other damages resulting from the cancellation of the ANICO ANTEX marketing contract with Moody Insurance Group and any other contract cancelled;

   c. All monetary loss and other damages resulting from the harassment initiated by ANICO and infliction of emotional distress against Robert L. Moody, Jr.

   d. All monetary loss and other damages due to the cancellation of the Moody Insurance Group Consulting agreement with ANICO cancelled in September 2018;

    e. All past payments that would have been paid, with interest, but for the retaliation;

    f. Alternatively, any rights or remedies for reinstatement with the same seniority status that Plaintiffs would have had but for the retaliation;

    g. All litigation costs, expert witness fees and reasonable attorneys' fees incurred by Plaintiffs.

40. Plaintiffs bring this action to recover such damages, and for such further relief, as they may be entitled to in law and/or in equity.

## VIII.
## TIMELINESS OF COMPLAINT

41. Moody has alleged he was disparately treated beginning on or about July 26, 2018. On December 12, 2018, he filed a complaint with the Secretary of Labor alleging the Defendant retaliated against him in violation of the Sarbanes-Oxley complaint. Moody's administrative complaint was filed within 180 days of the alleged adverse action and was, therefore, timely. Furthermore, 180 days has transpired since the filing of the administrative complaint, causing this action to also be timely.

## IX.
## JURY REQUEST

42. Plaintiffs request that this case be heard by a jury.

## X.
## PRAYER

Plaintiffs respectfully pray that Defendants be cited to appear and answer; that Plaintiffs recover recover their damages, litigation costs, expert witness fees, and reasonable attorneys' fees; and that Plaintiffs have such other and further relief, legal or equitable, special or general, to which Plaintiffs are entitled to recieve.

Respectfully submitted,

**MARTIN WALTON LAW FIRM**

*/s/Mike Martin*
Mike Martin
State Bar No.: 13094400
1335 Space Park Drive, Suite C
Houston, TX  77058
(713) 773-2035
(832) 559-0878 (Facsimile)
mmartin@martinwaltonlaw.com


**MUNSCH HARDT KOPF & HARR, P.C.**

/s/  *Richard A. Schwartz*
Richard A. Schwartz
State Bar No. 17869450
700 Milam Street, Suite 2800
Houston, Texas 77002
(713) 222-4076
dschwartz@munsch.com


### Certificate of Service

In accordance with 29 C.F.R. § 1980.114 (c) a copy of this complaint has been forwarded to the Occupational Safety and Health Adminsitration, Oklahoma Division.